# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JOHN D. ROBERTS,** | **CASE NO. 1:19 CV 1214** |
| Plaintiff, | **JUDGE CHRISTOPHER A. BOYKO** |
| v. | |
| **C.O. SCOTT,** *et al.*, | **OPINION AND ORDER** |
| Defendants. | |

**CHRISTOPHER A. BOYKO, J.:**

*Pro se* Plaintiff John D. Roberts filed this action under 42 U.S.C. § 1983 against Grafton Correctional Institution ("GCI") Corrections Officer Scott, GCI Corrections Officer David Brown, Ohio Department of Rehabilitation and Correction ("ODRC") employee Mr. Friend and ODRC employee Mr. Norris. In the Complaint, Plaintiff alleges Defendants have not assisted in removing a gang affiliation label from his prison file, resulting in a continued denial of parole. He asserts claims for denial of due process and Eighth Amendment violations. He seeks an Order from this Court removing the gang affiliation label and ordering the state to conduct a new parole hearing.

## I. BACKGROUND

Plaintiff was convicted in 1973 on two counts of Murder, one count of Aggravated Assault, and one count of Drug Abuse. He was sentenced to twenty years to life in prison. Plaintiff explains that prison culture has changed from when he was first housed in the Southern

Ohio Correctional Facility ("SOCF") in Lucasville, Ohio to the present date. He contends that in the early 1970's, inmate on inmate violence occurred regularly. He states prisons did not seek to punish attacks on other inmates with additional criminal offenses, instead preferring to place inmates in segregation and remove privileges which had little deterent effect. He claims inmates divided down racial lines for protection and this practice was encouraged by prison staff who found it easier to control smaller groups of inmates.

Plaintiff alleges he was transferred to the Mansfield Correctional Institution ("MANCI") in 1990. By that time, racial divisions in prison were creating greater security threats. He contends MANCI had just experienced a race riot before his arrival. In an attempt to racially integrate the prison, MANCI implemented a "forced permanent celling policy" in which inmates were assigned randomly to cells, without consideration of cellmate compatibility. Plaintiff alleges this policy led to an increased amount of inmate on inmate violence between cellmates that caused him to fear for his life. He protested the policy and refused cell assignments, resulting in his placement in segregation and limitation of privileges. He states the only way a prisoner could circumvent the policy was to prove to prison personnel that he had membership in racial separatist organization prior to entering prison. Inmates with this designation were permitted to request cell moves for reasons of incompatibility. Plaintiff contends he found a pamphlet for the Aryan Nation and arranged for a letter to be sent to the prison from the Aryan Nation Church confirming his membership prior to his incarceration.

The Lucasville prison riot occurred at SOCF in 1993, resulting in the deaths of a corrections officer and nine inmates. The riot was started and planned by Muslim gang members; however, they were joined by two other prison gangs, the Aryan Brotherhood and the

Black Gangster Disciples, once the riot began. *See State of Ohio v. Were,* 118 Ohio St. 3d 448 (2008). Plaintiff alleges that after the Lucasville riot, the ODRC developed policies to help them identify and monitor members of prison gangs, also known as Security Threat Groups ("STG"). Plaintiff's self-declaration of membership in the Aryan Nation Church earned him an STG label in his prison file.

The affiliation with the Aryan Nation Church that Plaintiff thought beneficial in the 1970's and 1980's was by the late 1990's a detriment to him. He alleges racial tensions in the prison had lessened over the years and the prison began to relax its stance on forced permanent celling. Plaintiff contends he was housed in the same cell with prisoners of other races without incident. The STG label, however, remained in his file and when he became eligible for parole, was cited as a factor to supervised release. He claims he attempted to renounce his affiliation with the Aryan Nation Church but prison officials have been skeptical of his conversion.

Plaintiff is now housed at GCI. He claims Scott called him a racist and indicated he would remove the STG designation if Plaintiff agreed to be housed with an African American inmate. Plaintiff indicated to Scott that he had been doing so for twenty years but Scott informed Plaintiff he would have to "prove himself" before Scott would recommend removal of the STG label. He wrote letters to Friend and Norris but did not receive relief. Plaintiff states he is now seventy-two years old and having a gang label places him in danger from other prisoners who take issue with those labels. He indicates the STG label it is still cited as a factor to deny his release on parole. Plaintiff claims the Defendants' refusal to remove the STG designation has denied him due process and amounts to cruel and unusual punishment. He asks this Court to order the ODRC to remove the STG designation and give him a new parole

hearing.

## II. LAW AND ANALYSIS

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when the Defendant is immune from suit or when the Plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action

will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

**Due Process**

Plaintiff first claims the Defendants denied him due process. Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. A state may create a liberty interest through a law or regulation establishing freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement is considered to be "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life." *Sandin*, 515 U.S. at 487. The Sixth Circuit Court of Appeals has already determined that a prisoner's designation as a member of an STG does not give rise to a liberty interest. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Plaintiff's inability to remove the STG designation from his prison file did not deny him due process.

**Eighth Amendment**

Plaintiff also claims the failure to remove his STG designation amounts to cruel and unusual punishment because it exposes him to the potential for violence from inmates opposing the Aryan Nation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. Plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In this case, Plaintiff fails to establish the subjective element. He declared his affiliation to the Aryan Nation Church and supplied the prison with documentation of his membership in that organization. To the extent that designation as a member of this group exposes him to potential violence from other gang members, it is the result of Plaintiff's own actions and not those of the Defendants. At best, they are skeptical of his renunciation of his twenty-year affiliation with this group after it was cited as a factor to deny his release on parole. The Complaint contains no facts suggesting the Defendants violated Plaintiff's Eighth Amendment rights.

### III. CONCLUSION

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

Date: October 9, 2019

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.